# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SOUTHERN CALIFORNIA EDISON COMPANY

Plaintiff,

v.

UNITED STATES OF AMERICA

Defendant.

Case No. 04-0109C

Judge Baskir

## JOINT STATUS REPORT

Pursuant to the Court's order dated August 11, 2005, the parties respectfully file this joint status report. The parties state their positions separately, below.

***Plaintiff's Report and Request to Lift Stay***

*A. Background.*

This case is one of a number of spent nuclear fuel damages cases currently pending before the Court. Plaintiff Southern California Edison (SCE) seeks damages for breach of a contract between SCE and the Department of Energy (DOE), which required DOE to commence accepting spent nuclear fuel on January 31, 1998. SCE filed the lawsuit on January 29, 2004. At a status conference on June 24, 2004, counsel for SCE

explained why the then-current circumstances justified a stay of proceedings, and the Court responded that it was "prepared to allow a certain period of time for [SCE counsel] to sort of assess your litigation risks and cost and benefits, but not into my old age." 6/24/04 Tr. at 39. The Court thereafter granted the jointly-requested stay. Since that time, the parties have jointly requested periodic extensions of the stay, the most recent of which expired by its terms on March 31, 2006.

The most fundamental issues initially posed in these spent nuclear fuel cases involved treatment of "future" damages. Because DOE's breach is continuing, plaintiffs such as SCE will continue to suffer damages for many, many years into the future. As significant as the already-incurred damages are, those future damages may well approach or exceed already-incurred costs. Accordingly, actions that might jeopardize recovery of those future damages (such as premature pursuit of a lump sum recovery in the present suit that could act as a bar to future recovery efforts) presented unacceptable risks, in the view of SCE. Issues regarding recovery of future damages were squarely presented in the first trial of a spent nuclear fuel case in March of 2004, and the subsequent appeal of that case on the merits.

In a decision that became final and binding in December of this past

year, the Federal Circuit definitively resolved questions about future damages. The Court of Appeals held that under the partial breach theory necessarily asserted by domestic nuclear utilities in these circumstances, recoverable damages are "limited to those costs incurred prior to the date of [plaintiff's] suit." *Indiana Michigan Power Company v. United States*, 422 F.3d 1369, 1377 (Fed. Cir. 2005).[1] The Court made clear, however, that a plaintiff utility may "obtain recovery for post-breach damages as they are incurred," 422 F.3d at 1377, and that "exceptions to the rules of merger and bar" are applicable to protect a plaintiff's right to pursue prospective damages in subsequent, future actions. 422 F.3d at 1377.

As described further below, beyond the legal questions regarding recovery of future damages, the remaining issues in this case are either unique to SCE's factual circumstances, or so unlikely to benefit from rulings within at least the next two or three years (if, indeed, even then), or both, that the interests of justice now dictate that this case be allowed to proceed.

---

[1] A request for rehearing was made and denied, the period for certiorai ran, and the mandate finally issued in the *Indiana Michigan* case on December 2, 2005.

B. <u>*The Stay Of This Case Should Now Be Lifted.*</u>

1. *No other spent nuclear fuel cases are now stayed over the objection of the plaintiffs in those cases.* SCE is not aware of any other spent nuclear fuel case currently pending before the Court that remains stayed over the objection of the plaintiff—in all of the spent nuclear fuel cases that remain stayed today, the respective plaintiffs have determined that their own particular circumstances continue to warrant such a stay. As described below, however, that is now not the case for SCE.

2. *No actions are likely to occur within a reasonable time period in other cases that could be expected to facilitate resolution of this case.* One of the issues that some plaintiffs and the government have occasionally cited as potentially affecting resolution of multiple spent nuclear fuel cases is the so-called "pick-up rate" issue, or the rate by which DOE was required to commence accepting spent nuclear fuel from the industry in 1998. The pick-up rate can potentially have a large affect upon damages that a plaintiff can show are due to DOE's breach. The issue was not resolved by the Federal Circuit in *Indiana Michigan*. More significantly, however, a binding appellate resolution of the issue is not on the reasonably foreseeable horizon. While the government's position has been rejected by every trial judge that has been called upon to address the argument, the

issue was not squarely presented in the one other final trial court decision that has been issued to date, due to factual circumstances unique to that plaintiff. *Tennessee Valley Authority v. United States*, 69 Fed. Cl. 515 (2006). Indeed, it is not a foregone conclusion that the Court will even need to reach the pick-up rate issue in this case—the Court in *Sacramento Municipal Utility District v. United States,* No. 98-488C, recently held, after trial, there to be recoverable damages, without ruling explicitly on the pick-up rate issue. See Order, No. 98-488C, March 31, 2006. There is also no guarantee that the trial judges in the two other cases that are now fully submitted after trial will reach the issue, nor that the matter will be resolved in some other pending case in the near future. Appellate resolution could mean nearly another two years after trial (using the *Indiana Michigan* case as a guide). Given the below-described harm of continued delay (and the fact that SCE believes that the so-called "rate issue" could be tried quite efficiently if it still needs to be resolved when this case is otherwise ready for trial), SCE does not believe waiting for possible resolution of the rate issue in some other case to be warranted.

One case, *PSEG Nuclear v. United States, No. 01-551C,* is currently on appeal to the Federal Circuit, regarding jurisdictional issues that this Court addressed and rejected in *Florida Power & Light Co.*, 98-483C. In

that appeal, however, neither party contests the Court's jurisdiction, and the likelihood of meaningful impact on this case is therefore, SCE suggests, quite remote. More to the point, however, that appeal has now been pending for nearly eight months (with the underlying issues pending before the trial court for much longer than that), and yet no other action in this Court has been deferred (over a plaintiff's objections), in favor of resolution of the *PSEG Nuclear* appeal. Indeed, SCE is not aware that the government has previously even argued that any case should be stayed in favor of resolution of the *PSEG Nuclear* appeal. The government recently agreed, for example, to a pre-trial schedule in *Carolina Power & Light Company v. United States*, No. 04-37C (Wheeler, J.), and the Court there stated an intent to schedule the late 2007 trial date requested by the plaintiff. SCE believes that this case should not be treated any differently.

Other issues present in other pending cases similarly do not justify continued delay. Whether this or that particular element of claimed damage is recoverable, for example, is likely to be a utility-specific factual determination, and unlikely to present the sort of overarching guidance that could justify continued deferral of proceedings.

3. *SCE is suffering significant economic harm by virtue of continued delay.* SCE is still in the process of assessing its damages to

date, but fully expects that the costs that it has incurred as a direct result of DOE's breaches will, though the end of calendar 2005, exceed $100 million. Prejudgment interest is of course not available. Even using a conservative calculation of the time value of money, it is readily apparent that SCE is suffering significant economic harm for every year of delay.

4. *Plaintiff requests that the Court enter a scheduling order for pre-trial and trial activities, and set a trial date.* For all of the reasons described above, SCE requests that the Court set a trial date, and enter a pre-trial schedule. In other SNF cases, the government has suggested a procedure whereby the plaintiff voluntarily produces a threshold damages schedule. SCE is generally agreeable to such an approach.

In particular, SCE would agree to a procedure whereby it will voluntarily produce a damages schedule. This damages schedule will include an identification of categories of costs that SCE will seek as damages, quantification of such damages, and appropriate supporting documentation. SCE will also identify the person(s) who can provide information and explanations required for verification of the identified items or figures. SCE recognizes that the government may wish to take traditional discovery regarding causation and reasonableness of claimed costs. Nevertheless, by agreeing to the voluntary initial production of a

damages schedule and supporting materials, and by allowing the government to audit that schedule and to tailor its discovery to claimed costs in a reasonable manner, SCE expects both parties to be able to avoid wasteful discovery. SCE also expects to be able to avoid the tedious exercise of introducing voluminous invoice documentation and testimony into the trial record just to establish the amounts of dollars spent, and what they were spent for. SCE's intent is that by making a threshold damages schedule production, the parties should ultimately be able to stipulate to the amount and nature of the costs incurred.

With respect to affirmative discovery from the government, SCE currently does not expect to need significant formal fact discovery, although it must reserve its right to pursue such discovery in light of issues that might be raised by the government as the lawsuit progresses. Indeed, if the government will agree to voluntarily produce deposition and trial transcripts, with marked exhibits, for current and former government-employee witnesses from prior spent nuclear fuel damages cases, SCE may not need to seek any additional documents at all.

The government seeks, as an alternative to deferral of all proceedings, deferral of setting of the trial date and all other pre-trial proceedings until after SCE's production of its damages schedule. Such a

dramatic departure from normal principles of case management is not justified here. The setting of a firm trial date imposes discipline on the parties, and SCE believes such a date to be critical for purposes of moving the case forward, ameliorating the above-described harm that SCE suffers from excessive delay, and furthering the interests of "just, speedy, and inexpensive" determination of the action. RCFC 1. If, as discovery and the case progress, the government believes that it can make a well-founded showing that additional time for trial preparation is warranted, the government will certainly make such a request. If the government's position is justified, it will presumably be granted the additional time. To not even set a date for the conclusion of pre-trial proceedings, however, until after SCE has undertaken and discharged a large portion of the pre-trial disclosure burden is an inequitable and ineffective approach.

SCE's proposed pre-trial and trial schedule is as follows:

- April 10, 2006 — Stay lifted; discovery can commence.
- August 31, 2006 — Plaintiff's damage schedules produced.
- January 31, 2007 — Plaintiff's expert reports, if any.
- May 31, 2007 — Defendant's expert reports, response to Plaintiff's damage schedules.
- June 22, 2007 — Plaintiff's rebuttal expert reports, if any.

- August 31, 2007 Close of all discovery.
- September 18, 2007 Exchange of exhibit, witness lists.
- October 5, 2007 Plaintiff's pre-trial memorandum.
- November 6, 2007 Defendant's pre-trial memorandum.
- November 27, 2007 or as soon thereafter as the Court's schedule will allow: trial.

***Defendant's Report***

Defendant respectfully requests that the Court continue to stay the proceedings for another six months to allow decisions to be issued in pending appeals and other cases before the Court which will guide the resolution of this matter. In the alternative, defendant respectfully requests that plaintiff be required to provide its damages submission, with expert reports, for the Government's review before any schedule is set.

*A. Decisions Expected Soon In Other Cases Will Aid The Resolution of This Case.*

Defendant respectfully requests that the Court continue the stay of proceedings for at least another six months pending the expected resolution of the appellate review in PSEG Nuclear, L.L.C. v. United States, No. 05-5162 (Fed. Cir.), and decisions in other SNF damages cases in this Court which have proceeded to a more advanced stage. As the Court may be aware, the Court's decision in PSEG Nuclear L.L.C v. United States, 64

Fed. Cl. 37 (2005), that this Court lacks jurisdiction to hear the pending partial breach of contract claims arising from the Standard Contract, is on appeal to the Federal Circuit. We expect that the Federal Circuit's decision will provide guidance regarding the scope of the jurisdiction of this Court as well as the jurisdiction of the United States Court of Appeals for the District of Columbia Circuit to consider claims by utilities under the Standard Contract. Oral argument is scheduled for May 1, 2006 and we expect that a decision would be issued within a reasonable period of time thereafter. Because the ruling of the Federal Circuit is expected to provide guidance regarding the scope of this Court's jurisdiction to consider SCE's claims, defendant believes that it is prudent to await that decision from the Federal Circuit.

Defendant further believes that the resolution of this case will also be aided by decisions that may be issued soon in Yankee Atomic Elec. Co. v. United States, No. 98-126C, Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C, and Maine Yankee Atomic Power Co. v. United States, No. 98-474C (Merow, S.J.). Trial was conducted in these cases in July and August 2004. Since the Court last acted to extend the stay of proceedings by order dated August 31, 2005, decisions have been issued in Sacramento Municipal Utility District v. United States, No. 98-

488C, slip op. (Fed. Cl. March 31, 2006), and Tennessee Valley Auth. v. United States, 2006 WL 242671 (Fed. Cl. Jan. 31, 2006). In Sacramento Municipal, the final order has not entered because the Court has asked for the submission of further evidence. The Government filed a notice appeal in Tennessee Valley on April 3, 2006, and the appellate court decision in that case could control various issues pending in this case such as the types of damages that are recoverable in a partial breach action. In fact, it is likely that any decision in Tennessee Valley would deal with the rate of acceptance issues that are a central part of any causation analysis, potentially precluding the need to address those issues in this case. In summary, multiple cases are proceeding on various fronts which could either control or inform this Court's resolution of various key issues in this case. Given SCE's willingness to stay the case in the past, the Court should continue the stay for another period to allow some of these remaining cases to advance.

A continuation of the stay is also necessary since counsel for defendant has been and will be extensively engaged in discovery and other pre-trial matters in several other SNF cases pending before this Court. Counsel is expected to participate in many of the upcoming damages trials: Pacific Gas & Electric Co. v. United States, Nos. 04-0074 and 04-0075

(Hewitt, J.), June 5-16, 2006; System Fuels, Inc. v. United States, No. 03-2624C (Braden, J.), beginning on September 18, and continuing in December 2006; Northern States Power Co. v. United States, No. 98-484C (Wiese, S.J.), beginning October 23, 2006; System Fuels, Inc. v. United States, No. 03-2623 (Lettow, J.), February 12-23, 2007; Wisconsin Electric Power Co. v. United States, No. 00-697 (Merow, S.J.), March 27-April 16, 2007; and Boston Edison Co. v. United States, No. 99-447C/Entergy Nuclear Generation Co. v. United States, No. 03-2626C (Lettow, J.), May 7-18, 2007. In addition, discovery is continuing in several additional cases.

*B. SCE's Claim Of Economic Harm Is Misleading.*

SCE's assertion that the stay should now be lifted because SCE is suffering significant economic harm is a bit misleading because, at the present time, the Court, in this partial breach of contract case, is limited to consideration of the damages incurred as of the date of the filing of SCE's complaint – January 29, 2004. Simply lifting the stay in this case will not alter SCE's ability to pursue additional damages that it allegedly continues to incur.

Pursuant to the Federal Circuit's ruling in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005), in a claim for partial breach, the plaintiff may only seek damages through the date of the filing of

its complaint. As the Federal Circuit held, a partial breach claimant, like SCE, may "sue from time to time for the damages incurred to the date of suit," which was defined as "the time of the institution of the action." Id. at 1377 (quoting Restatement (Second) of Judgments § 26(e) & cmt. g (1982); see Pacific Gas and Electric Co. v. United States, No. 04-0074, slip op. at 9-10 (Fed. Cl. March 30, 2006) ("court interprets these directives to mean that plaintiff may seek damages only through the date of an amended complaint"). To the extent that SCE has incurred additional damages since the filing of its complaint, SCE must move to amend its complaint to provide the Court with jurisdiction to consider those additional damages. See, e.g., Indiana Michigan, 422 F.3d at 1378 (discussing how, for future post-complaint damages, a plaintiff in an SNF case must bring a future action within six years of accrual to invoke this Court's jurisdiction). The benefit of this procedure is that it provides the plaintiff with a firm date through which damages will be considered, leaving any additional damages incurred after that date for consideration in another matter.

In its portion of this report, SCE claims that it will have incurred more than $100 million in damages through 2005 because of the Government's partial breach of the Standard Contract. Although the Government has not been provided with any explanation as to what costs comprise those

alleged damages, based upon our experience with other cases, we surmise that SCE has been incurring costs for the construction of dry storage facilities through 2005. SCE should determine how much of these costs it wants to recover in this action, file a motion for leave to file an amended complaint based upon those damages through that date, and then prepare its damages submission to capture those costs.

C. *Prior To The Establishment Of Any Schedule, Plaintiff Should Provide Its Damages Submission With Expert Reports.*

If the Court determines that the current stay of proceedings should be lifted, defendant respectfully requests that the Court order that SCE provide its damages submission, with expert reports, to the Government prior to the establishment of any schedule for the further proceedings in this case. After reviewing this submission, the Government should be able to accurately estimate the amount of time we believe we will need to conduct the necessary discovery and provide responsive expert reports. Proceeding in this manner will be the most efficient.

In the cases that have proceeded to trial, the Government has learned that it can most efficiently proceed with discovery and trial preparation when it has a full explanation of plaintiff's claims and theories of causation, usually set out in the reports of plaintiff's experts. With these explanations, the Government conducts an audit and propounds properly

tailored discovery requests. The Government also cannot provide a meaningful estimate of the time it will require to audit SCE's claims until it has an opportunity to review the damages claims and the supporting material to determine how much more work will be needed to determine if the claimed damages are adequately documented. To date, the Government has only received from SCE its initial disclosures, in which it states that the information it provided is subject to SCE's "continuing investigation." The Government has no objection to SCE concluding its own investigation, but asks that it then be provided with the full explication prior to being asked to agree to a schedule for further proceedings.

In its portion of the report, SCE indicates that it is willing to provide a damages schedule, which will include an identification of categories of costs, the quantification of such damages and the appropriate supporting documentation, and the identification of persons who can provide information and explanation of these claims. However, SCE does not propose to provide its expert reports for another five months after the submission of this damages schedule. Based upon the Government's experience in other cases, notably Southern Nuclear Operating Co. v. United States, No. 98-614C (Merow, S.J.), and Pacific Gas & Electric Co. v. United States, No. 04-0074 & 0075 (Hewitt, J.), this bifurcation of the

submission of the damages claim from the expert reports is inefficient and leads to the duplication of discovery efforts by the Government. This duplication stems from the fact that the damages claims, in our experience, have changed substantially in both structure and amount between the time of the submission of the claim and the submission of the expert reports. When presented with these changes, the Government's auditors have had to reanalyze and reconduct portions of their original audit and examine new cost categories that have been added by the plaintiffs' experts. In addition, Government counsel have been required to reopen depositions of plaintiffs' personnel to examine the basis for the plaintiffs' expert's calculations and determinations. In Southern Nuclear, the changes in plaintiffs' damages claim were so significant that the Government was granted an enlargement of three months to complete its expert reports and the trial date was moved approximately two months. In Pacific Gas and Electric, the changes to the claim were made after the close of fact discovery and Government counsel had to reopen several depositions. To avoid this unnecessary duplication, the Government asks that we be provided with the damages claim and the expert reports at the same time and before a schedule for further proceedings is established.

Further, while SCE recognizes that the Government will need to take

discovery regarding plaintiff's theory of causation, the Government has not been provided with any explanation as to SCE's theory of causation. Beginning discovery into these theories before SCE has formalized them in its expert reports is simply an inefficient manner in which to proceed.

D. *Other Matters For The Court's Consideration.*

By motion filed September 8, 2004, the Government sought entry of three orders that have been entered in many of the other spent nuclear fuel cases pending before the Court -- a protective order, an order governing review of the Record Information System database maintained by DOE, and an order governing the production of electronic mail. Counsel for SCE indicated at the time that the motion was filed that SCE did not oppose entry of these orders. If the case is to proceed, defendant respectfully requests that the Court enter these orders.

In its portion of the status report, SCE states that the Government should voluntarily agree to produce the deposition and trial transcripts, with marked exhibits, for all current and former government employees who have been deposed or testified. To date, 55 current and former Government or contractor employees have been deposed for a total of 134 days. In addition, trials have been conducted in eight spent nuclear fuel cases in which current or former Government employees have testified.

The Government should not be required to produce these transcripts, for which it has paid significant sums of money to the various court reporters who transcribed them. Kinan v. City of Brockton, Massachusetts, 112 F.R.D. 206, 207-208 (D. Mass. 1986). However, pursuant to the Rules of the Court of Federal Claims, SCE may pay the court reporting services for copies of these depositions and exhibits. RCFC 30(f)(2) ("Upon payment of reasonable charges therefore, the officer shall furnish a copy of the transcript or other recording of the deposition to any party . . . ."). We will provide a list of these depositions and the trial testimony, the dates of each, and the court reporting service that produced the transcripts.[2]

[2] Heritage Reporting Service, the court reporting service under contract to the United States Court of Federal Claims, should have copies of all of the trial testimony.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch,

s/ Brad Fagg
Brad Fagg
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5191 – telephone
(202) 739-3001 – facsimile

s/ Marian E. Sullivan
MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch,
Civil Division
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
(202) 305-7562 – telephone
(202) 305-7643 – facsimile

of Counsel:
Paul M. Bessette
MORGAN, LEWIS & BOCKIUS, LLP

Attorneys for Plaintiff
Southern California Edison
Company

Attorneys for Defendant

April 7, 2006

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 7th day of April, 2006, the foregoing was filed with the Court electronically, and service is thereby deemed to have been made upon all counsel of record.

s/ Paul Bessette