**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**SOUTHERN CALIFORNIA EDISON COMPANY**

Plaintiff,

v.

**UNITED STATES OF AMERICA**

Defendant.

Case No. 04-0109C

Judge Baskir

**JOINT STATUS REPORT**

Pursuant to the Court's order dated April 19, 2006, the parties respectfully file this joint status report. The parties state their positions separately, below.

***<u>Plaintiff's Report</u>***

*A. <u>The "specific issues in the case."</u>*

As described in the Joint Status Report filed on April 7, 2006, in this case plaintiff Southern California Edison (SCE) seeks damages for breach of a contract between SCE and the Department of Energy (DOE). That contract required DOE to commence accepting spent nuclear fuel on

January 31, 1998. SCE seeks recovery based upon partial breach of contract and breach of the duty of good faith and fair dealing.

As damages, SCE will seek costs incurred in connection with storage of spent nuclear fuel, through a date certain (currently expected to be the end of calendar 2005). Those costs were incurred in efforts to mitigate the damages arising from DOE's breach. While those costs will obviously be demonstrated in much greater detail in later proceedings (and SCE does not intend the following description to be exclusive), as a general matter the damages sought will consist of costs expended in connection with design and construction of so-called "dry storage" facilities at the SCE site. Related costs associated with assessments of storage options and procurement and fabrication of the canisters and storage systems in which the spent nuclear fuel is stored, and costs associated with the actual storage and loading of spent nuclear fuel into the storage systems, will also be sought by SCE. SCE has also incurred, and will seek recovery of, significant costs in connection with storage of spent nuclear fuel at a remote facility. SCE's damages will consist of payments to outside vendors and third parties, internal labor, equipment, and material costs, and appropriate overheads and related burdens.

To recover, SCE will be required to show that "(1) the claimed damages were reasonably foreseeable by the breaching party at the time of contracting; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty." *Indiana Michigan Power Company v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005) (citation omitted). SCE will seek those costs necessary to place itself in "as good a position as it would have been had the breaching party fully performed." *Id.*

With respect to causation, SCE will demonstrate that DOE's breach was a "substantial causal factor" in the expenditure of the requested costs, and that those costs would not have been incurred if DOE had "fully performed." Such full performance in these circumstances required not only that DOE commence accepting spent nuclear fuel on January 31, 1998, but that it accept fuel at an industry wide "pick-up rate" sufficient to prevent additional on-site storage after 1998, and to begin to eliminate the backlog of spent nuclear fuel accumulated prior to that date. The evidence will establish such a rate to be acceptance by DOE of an aggregate of 3000 metric tons of uranium ("MTU") per year. In other damages cases, the government has contended that it was only required to perform at an artificial and much slower "pick-up rate," and has further contended that

certain costs are unrecoverable because they "would have been incurred anyway" under such assumptions.

SCE believes that the "specific issues in the case" involve simple application of the straightforward legal standards set forth by the Federal Circuit in *Indiana Michigan* to the evidence of particular, discrete costs that will be claimed by SCE. SCE presumes that the government will seek to challenge causation upon the basis of the pick-up rate issues noted above, but, beyond that, SCE is not aware of what defenses the government may seek to interpose, nor of what additional "specific issues" might be implicated by such defenses. SCE respectfully suggests that deferral of proceedings in this case in favor of purported issues that might (or might not) actually be implicated here, and which might (or might not) be resolved in other pending cases, is speculative and unjustified.

*B. "Whether any cases currently proceeding before this Court and the Federal Circuit are expected to address any of the issues in this case."*

As described in SCE's portion of the Joint Status Report dated April 7, 2006, SCE believes that the issues in this case are either unique to SCE's factual circumstances, or so unlikely to benefit from rulings within at

least the next two or three years (if, indeed, even then), or both, that the interests of justice now dictate that this case be allowed to proceed. Indeed, *no other* spent nuclear fuel case is now stayed over the objection of the plaintiff in that case. SCE suggests that such a stay is not warranted here.

In the prior status report, the government invoked the pendency of *PSEG Nuclear v. United States, No. 01-551C,* before the Federal Circuit, as argued grounds for continuation of the stay. That case nominally involved jurisdictional issues that this Court addressed and rejected in *Florida Power & Light Co.*, 98-483C, but, on appeal in *PSEG Nuclear*, neither party contested the Court's jurisdiction. Given that fact, the likelihood of meaningful impact on this case is therefore, SCE suggests, quite remote. Mere invocation of possible "guidance regarding the scope of the jurisdiction of this Court" (April 7, 2006 Joint Status Report at 11) falls far short of justifying the extraordinary step of staying these proceedings over SCE's objection. As SCE previously noted, that *PSEG Nuclear* appeal, which was argued on May 1, 2006, has also now been pending for nearly nine months (with the underlying issues pending before the trial court for much longer than that), and yet no other lawsuit in this Court has

been deferred over a plaintiff's objections in favor of resolution in *PSEG Nuclear*.

One of the issues that some plaintiffs and the government have occasionally cited as potentially affecting resolution of multiple spent nuclear fuel cases is the so-called "pick-up rate" issue, or the rate by which DOE was required to commence accepting spent nuclear fuel from the industry in 1998. As noted above, the pick-up rate can potentially have an impact upon damages that a plaintiff can show are due to DOE's breach. The issue was not resolved by the Federal Circuit in *Indiana Michigan*. More significantly, however, a binding appellate resolution of the issue is not on the reasonably foreseeable horizon. While the government's position has been rejected by every trial judge that has been called upon to address the argument, *e.g., Indiana Michigan Power Company v. United* States, 57 Fed. Cl. 88 (2003), the issue was not squarely presented in the one other final trial court decision that has been issued to date, due to factual circumstances unique to that plaintiff. *Tennessee Valley Authority v. United States*, 69 Fed. Cl. 515, 530 (2006) (pick-up rate issue "largely a hypothetical exercise" in context of that case). Similarly, the Court in *Sacramento Municipal Utility District v. United States,* No. 98-488C, recently held, after trial, there to be recoverable damages, without ruling

explicitly on the pick-up rate issue. *See* Order, No. 98-488C, March 31, 2006, 2006 WL 950218. There is also no guarantee that the trial judges in the two other cases that are now fully submitted after trial will reach the issue, nor that the matter will be resolved in some other pending case in the near future. Appellate resolution could mean nearly another two years after trial (using the *Indiana Michigan* case as a guide). Given the harm of continued delay (and the fact that SCE believes that the so-called "pick-up rate issue" could be tried quite efficiently if it still needs to be resolved when this case is otherwise ready for trial), SCE does not believe waiting for possible resolution of the pick-up rate issue in some other case to be warranted.

Other issues present in other pending cases similarly do not justify continued delay. The so-called "*Yankee*" cases, Nos. 98-126C, 154C, and 474C, for example, present factual circumstances (*e.g.,* plants that are fully shut down) that are potentially quite different from the SCE circumstances, not to mention completely different accounting, procurement, financial, and other company systems that can affect the recoverability of costs. At the end of the day, whether this or that particular element of claimed damage is recoverable is likely to be a utility-specific factual determination. Predicting what sort of particular costs might be addressed in cases where trials have

not even yet occurred, and extrapolating how possible rulings in such cases might impact SCE's claims, is speculation on top of speculation. And, it is anybody's guess when rulings in other cases, and the inevitable appeals, might issue. SCE respectfully suggests that continued deferral of proceedings in favor of hoped-for efficiencies or resolution in other pending matters is not justified in these circumstances.

*C. SCE is suffering significant economic harm by virtue of continued delay.*

SCE is still in the process of assessing its damages to date, but fully expects that the costs that it has incurred as a direct result of DOE's breaches will, though the end of calendar 2005, exceed $100 million. Prejudgment interest is of course not available. The real economic harm of continued delay, which is based upon dollars already expended by SCE (and not, as the government has suggested, on to-be-incurred damages) is self-apparent. This fact further militates against affording the continued stay requested by the government.

***Defendant's Report***

The Court, in its order dated April 19, 2006, requested that the parties identify the specific issues in this case and discuss whether any cases

proceeding before this Court or the United States Court of Appeals for the Federal Circuit are "expected to address these issues." Because this case has been stayed since it was filed, the Government has no insight into the unique issues that may arise in the litigation of SCE's partial breach claim.[1] Therefore, we rely upon SCE's description of its claims set forth above. SCE's explanation of its claims demonstrates that plaintiff's claim is no different from the claims that are currently being litigated in other cases before the Court. Because there remain common issues regarding the scope of the Government's obligation to all of the utility plaintiffs, which have not yet been decided by the Federal Circuit, the interests of judicial economy are best served by allowing those issues to proceed in other cases and allowing this case to remain stayed.

SCE describes its claims as those for partial breach and breach of the duty of good faith and fair dealing. With the exception of plaintiffs that have sold their nuclear facilities and seek to recover the alleged diminution in value resulting from DOE's partial breach, all of the utility plaintiffs with cases before the Court are proceeding with legally similar claims.

[1] SCE provided initial disclosures on May 27, 2004, but, as noted in our previous status report, SEC noted that its investigation of its claims was "continuing." The Government has not been provided a complete explanation of all SCE's claims and would ask that this information be provided as the first step in any further proceedings that are scheduled by the Court.

Moreover, SCE correctly describes the threshold issue that must be determined before SCE can establish causation and the damages it is owed – namely, at what rate was DOE obligated to accept fuel from the nuclear utilities with which it held contracts beginning in 1998. Apparently, SCE plans to argue, just as all the utility plaintiffs have before it, that the Government's obligation was set forth in program planning documents that showed a steady-state rate for repository operations to be 3,000 MTU. The Government will demonstrate that the rate established pursuant to the contractual mechanism for the development of the rate and binding commitments was a steady state rate of 900 MTU until the repository began operations. The Government has presented evidence on this point in every trial conducted since *Indiana Michigan* and would expect to present the same evidence at trial in this matter if trial was conducted before the Federal Circuit has issued a decision on this matter.[2]

However, there are SNF cases that are more procedurally advanced than this case in which this issue has been presented that should result in a decision from the Federal Circuit on this threshold issue. For example, the

[2] As SCE correctly explains, in *Indiana Michigan*, the Court's determination regarding the scope of the Government's obligation was not determinative of the final result in that case. The issue of the Government's obligation was not necessary to the Court's judgment, and the Federal Circuit dismissed the (continued).

scope of the Government's obligations may be decided by the Federal Circuit when it considers our pending appeal, and we expect our appellate brief, which is due to be filed on June 17, 2006, to address this issue directly. *Tennessee Valley Authority v. United States*, 69 Fed. Cl. 515 (2006), *appeal filed*, No. 2006-5073 (Fed. Cir. docketed April 19, 2006). Evidence regarding the scope of the Government's obligation was presented at trial in (1) *Yankee Atomic Electric Co. v. United States*, Fed. Cl. No. 98-126C, *Connecticut Yankee Atomic Power Co. v. United States*, Fed. Cl. No. 98-154C, and *Maine Yankee Atomic Power Co. v. United States*, No. 98-474C (Merow, S.J.), which were tried together; and, (2) *Southern Nuclear Operation Co., et al. v. United States*, Fed. Cl. No. 98-614C (Merow, S.J.), cases in which we are awaiting decisions from the Court. Any appeal from these decisions would presumably include consideration of this issue. In addition, this issue is highly relevant in *Pacific Gas & Electric Co. v. United States*, Fed. Cl. Nos. 04-0074 & -0075 (Hewitt, J.), which is scheduled for trial from June 5 to 16, 2006, and the judge assigned to that case has represented that she intends to issue a decision on the trial by August 2006.

---

Government's cross-appeal on the rate for that reason. 112 F.Appx. 37, 2004 WL 2429837 (Fed. Cir. Oct 13, 2004).

Awaiting guidance from the Federal Circuit on issues common to all of the SNF cases has proven to be very productive. With the Federal Circuit's ruling in *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369 (Fed. Cir. 2005), which limits the Court's consideration of damages to those incurred before the filing of plaintiff's complaint, the Court need no longer wrestle with the speculative nature of estimated future damages. In *Indiana Michigan*, the Federal Circuit held that, in a claim for partial breach, the plaintiff may "sue from time to time for damages incurred to the date of the suit," which was defined as "the time of the institution of the action." *Id.* at 1377 (quoting *Restatement (Second) of Judgments)* (26(e) & cmt. g). This limitation on the scope of damages claims to be considered has simplified the cases that are now proceeding to trial. Similarly, if the Court were to await a Federal Circuit decision regarding the scope of the DOE's obligations regarding the rate of acceptance, that ruling could simply be applied in this case to determine the scope of the damages owed to SCE. There should also be other Federal Circuit precedents to apply regarding the types of damages that the utility plaintiffs may obtain in pursuit of their partial breach claims.

Finally, with regard to the appeal of *PSEG Nuclear L.L.C. v. United States*, 64 Fed. Cl. 37 (2005), *appeal docketed*, No. 05-5162 (Fed. Cir.), as

we noted in our previous status report to the Court, plaintiff has appealed the Court's order dismissing its complaint for lack of jurisdiction. In deciding this appeal, in which oral argument was conducted on May 1, 2006, the Federal Circuit may provide guidance regarding the scope of the jurisdiction of this Court as well as the jurisdiction of the United States Court of Appeals for the District of Columbia Circuit to consider claims by utilities under the Standard Contract. Continuing the stay of the case for at least another six months should provide time for the Federal Circuit's resolution of this threshold issue.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch,

s/ Brad Fagg
Brad Fagg
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5191 – telephone
(202) 739-3001 – facsimile

s/ Marian E. Sullivan
MARIAN E. SULLIVAN
Trial Attorney
Commercial Litigation Branch,
Civil Division
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
(202) 305-7562 – telephone
(202) 305-7643 – facsimile

of Counsel:
Paul M. Bessette
MORGAN, LEWIS & BOCKIUS, LLP

Attorneys for Plaintiff
Southern California Edison
Company

Attorneys for Defendant

May 8, 2006

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 8th day of May, 2006, the foregoing was filed with the Court electronically, and service is thereby deemed to have been made upon all counsel of record.

s/ Brad Fagg