# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**SOUTHERN CALIFORNIA EDISON COMPANY,**

Plaintiff,

v.

**UNITED STATES OF AMERICA,**

Defendant.

Case No. 04-0109C

Judge Baskir

## JOINT STATUS REPORT

Pursuant to the Court's order dated June 10, 2008, plaintiff Southern California Edison Company ("SCE") and defendant the United States respectfully file this joint status report regarding (a) the status of discovery, and (b) the current status of other Spent Nuclear Fuel ("SNF") cases, with special attention to the issues common to those involved in this matter.

I. Status Of Discovery

After tomorrow, discovery in this action will be complete. The only remaining open item is plaintiff's deposition of the final Government expert witness, scheduled for tomorrow, July 2. No other depositions are scheduled or currently planned.

The Government has taken 21 depositions of current and former

employees of plaintiff, as well as of third parties, over 29 deposition days. Plaintiff has produced over 100,000 pages of documentation to the Government, and responded to several hundred individual cost audit inquiries from the Government.

Plaintiff in this case has taken the depositions of two of the three Government experts, with, as noted, the last deposition scheduled to be completed tomorrow. Plaintiffs in the spent nuclear fuel cases have deposed 58 current or former Government employees and/or contractors, in 104 depositions, totaling 149 days of testimony. While SCE has not taken any fact depositions in this matter, the transcripts of these depositions are available to SCE. The Government has also produced over two million pages of documents to the SNF plaintiffs.

II. Status Of Other SNF cases.

Pursuant to the Court's order dated June 10, 2008, attached as Exhibit A is a chart containing an update of the status of all other SNF cases. The parties separately set forth below their positions regarding the issues common to those involved in this matter.

A. Plaintiff's position. Plaintiff respectfully offers the following observations regarding issues in: (i) cases on appeal after final judgment; (ii) a case in which an interlocutory appeal is pending; (iii) cases awaiting

final judgment or with final judgments but in which the time for appeal has not yet run; (iv) cases with trial dates; (v) cases in active discovery; and (vi) other cases that are stayed or are not in active discovery.

As set forth in the parties' status report dated February 22, 2008, SCE believes that this matter should be set for trial, at the Court's earliest reasonable opportunity. As noted above, discovery is essentially complete. No matter what might happen in other cases or appeals, there will ultimately have to be a trial in this matter. In the absence of pre-judgment interest on SCE's approximately $150 million dollar claim for damages through the end of 2005, SCE suffers real economic harm from further delay. The Government previously indicated that a November trial date would be workable, and SCE believes that date to be reasonable and achievable.

i. *Cases on appeal after final judgment*. Of the cases on appeal after final judgment, a "set" of partially-consolidated appeals were argued before the same panel in February 2008. *Connecticut Yankee, Maine Yankee, Yankee Atomic,*, Nos. 98-126, 154, 474; *Pacific Gas & Electric*, No. 04-74, and *Sacramento Municipal Utility District*, No. 98-488. Those appeals potentially involve issues regarding the so-called "acceptance rate," or the rate by which the Government's legal obligations, commencing

in 1998, are to be measured for purposes of calculating damages. It is possible, although by no means certain, that the Court of Appeals could rule in a manner that provides guidance regarding such issues in this case. This Court has, however, awarded damages without making an express finding regarding such issues, *e.g., Sacramento Municipal Utility District v. United States*, 70 Fed. Cl. 332, 374 (2006), and fact-specific determinations or case-specific remands in the pending appeals are certainly possible. In the interim, multiple cases involving the so-called "pick up rate" have been tried and/or decided since the above-noted appeals were originally filed. *E.g., Carolina Power & Light Co. v. United States*, __ Fed. Cl. __, 2008 WL 2154103 (No. 04-37C, May 19, 2008)*, System Fuels v. United States,* 79 Fed. Cl. 37 (2007); *Northern States Power Company v. United States*, 78 Fed. Cl. 449 (2007). Plaintiff does not believe that the possible presence of the "pick-up rate" issue in the above-noted appeals warrants further delay in the trial or resolution of this matter.

Other, relatively minor, issues that could be involved in this matter might also be presented in the pending fully-submitted appeals. These include the government's obligation to accept what is called Greater-Than-Class-C Waste under the Department of Energy contract, which potentially implicates something on the order of less than 1% of SCE's present

claimed damages. Government defenses to certain categories of costs, such as internal labor, might also be implicated in the above-noted appeals, but (a) the chances of fact-specific rulings on those matters are, plaintiff suggests, high, and (b) the savings of trial time that might be gained by any appellate rulings regarding such issues would in any event be quite minimal.

Beyond the above-identified matters, the other appeals identified on Exhibit A have either been stayed at the government's request, or involve assignment or purchase-of-plant issues that are not implicated at all in this case.

ii. *Interlocutory appeal pending*. The ability of the government to assert an "unavoidable delays" excuse for its non-performance has been raised by the Court in *Nebraska Public Power District v. United States*, 74 Fed. Cl. 762 (2006), the interlocutory appeal of which was argued in December 2007. No other Judge of this Court has yet followed *Nebraska Public Power District*, and multiple cases have proceeded to trial since that initial ruling. *E.g., Carolina Power & Light Co. v. United States*, No. 04-37C, 2008 WL 2154103 (Fed. Cl. May 19, 2008); *System Fuels v. United States,* 79 Fed. Cl. 37 (2007); *Dominion Resources, Inc. v. United States*, Nos. 04-83C, 84C (trial completed May 16, 2008).

SCE does not believe that further delay pending resolution of the *Nebraska Public Power District* appeal would be warranted in this case. In the event that a decision by the court of appeals altered the current law prior to the trial or resolution of this matter, SCE believes that such a development could be accommodated without further or unreasonable delay. Indeed, in several other cases the government has successfully introduced its so-called "excuse" evidence into the trial records, albeit sometimes under theories such as the evidence being relevant to the government's pick-up rate arguments or to rebut allegations of DOE breach of duties of good faith. *E.g., Southern Nuclear Operating Company v. United States*, 77 Fed. Cl. 396, 456 (2007)*; Dominion Resources*, Nos. 04-83, 84C (May 16, 2008 Tr. at 2861-2870, 2932-2936).

iii. *Cases awaiting final judgment or where time to appeal has not yet run*. SNF damages cases and trials have now become "commonplace" in this Court. *Boston Edison Company v. United States*, 80 Fed. Cl. 468 (2008). The most recent decision after trial was issued in *Carolina Power & Light Co. v. United States*, __ Fed. Cl. __, 2008 WL 2154103 (No. 04-37C, May 19, 2008). The most recent trial was in *Dominion Resources, Inc. et al. v. United States*, Nos. 04-83, 04-84, concluded on May 16, 2008. As a result, a growing body of case law regarding various discrete issues is now

available to assist where useful, or for the parties to attempt to distinguish where they believe that to be appropriate. Individual trials, however, are still necessary in each case because of the utility-specific nature of claimed damages. As noted above, SCE urges that the trial of this case be scheduled at the Court's first reasonable opportunity.

iv. *Cases with trial dates*. Two additional cases are currently set for trial. It is possible that some issues discussed above, such as the so-called "pick up rate," might also be implicated in those matters. However, final resolution, including appeals, could still be years away.

v. *Cases in active discovery.* As noted in Exhibit A, several cases are in various stages of active discovery, and trial dates can be expected to be set for at least some of those cases in the coming weeks and months. Again, there may be some similarity of issues between those cases and this one, but there are certain to be issues unique to this case that, at the end of the day, will require a trial to resolve.

vi. *Other cases stayed or not in active discovery*. In 2005, the Federal Circuit ruled in *Indiana Michigan v. United* States, 422 F.3d 1369 (Fed. Cir. 2005) that only damages incurred up until the time of trial may be recovered, with subsequent damages reserved for future proceedings. Accordingly, many utilities that to date have not yet undertaken the sort of

extensive mitigation projects undertaken by SCE have been content to allow their pending cases to remain stayed. That is the most common factor for those cases that remain stayed today. Beyond that, because active litigation has not yet commenced, it is impossible to know whether issues that might arise in those stayed matters could also be involved in this case.

B. Defendant's position.

The Government agrees with SCE that this case is ready to be scheduled for trial. The Government still believes that it would be possible to accommodate a trial date as early as mid-November, following completion of the trial in another spent nuclear fuel case, Energy Northwest v. United States, No. 04-10C (Fed. Cl.), which is scheduled for October 20 through October 31, 2008. Should the Court be inclined to schedule trial in this case after the mid-November time period, we note that the parties in Arizona Public Service Co. v. United States, No. 03-2832 (Fed. Cl.), have proposed a two-week trial beginning in middle to late January. Essentially the same Government attorney trial team is expected to try that case and this one.

While the Government is ready and able to proceed with trial, we recognize that the Court has expressed an interest in the current status of

other spent nuclear fuel cases, particularly the extent to which the issues in those cases are common to the ones involved in this case. We respectfully disagree with SCE, in some respects, as to the potential effect upon this case of the other cases, particularly those cases awaiting decision from the Federal Circuit. We will attempt to address those cases in roughly the same order in which SCE discusses them above.

i. *Cases on appeal after final judgment*.

As discussed by SCE, the Federal Circuit consolidated for argument Pacific Gas and Electric Co. v. United States, No. 2007-5046 (Fed. Cir.), Yankee Atomic Electric Co. et. al. v. United States, No. 2007-5025, -5026, -5027, -5031, -5032, -5033 (Fed. Cir.), and Sacramento Municipal Utility District v. United States, No. 2007-5052, -5097 (Fed. Cir.) ("SMUD").

One of the central issues in the Yankee Atomic, Pacific Gas, and SMUD appeals, as well as in other spent nuclear fuel cases that have been tried before the Court of Federal Claims, relates to the scope of DOE's contractual obligations with regard to SNF acceptance after 1998. Specifically, although the Standard Contract provides that DOE will begin SNF acceptance from the nuclear industry by January 31, 1998, it does not specify the rate or schedule at which DOE must continue that acceptance after January 31, 1998. In the Pacific Gas case, this Court agreed with the

Government's position regarding the required rate of acceptance. The Court did not adopt the Government's position regarding rate of acceptance in the Yankee Atomic and SMUD cases, and awarded the plaintiffs much of the damages they sought.[1] Here, the Government and SCE disagree as to the legally required rate of acceptance under the Standard Contract, and the Federal Circuit's decisions in those cases could be dispositve of this issue, or at least provide guidance in resolving it.

The acceptance rate issue is crucial to any causation and damages analysis: under guiding precedent, "[t]o derive the proper amount for the damages award, the costs resulting from the breach must be reduced by the costs, if any, that the plaintiffs would have experienced absent a breach." Bluebonnet Sav. Bank, F.S.B. v. United States, 339 F.3d 1341, 1345 (Fed. Cir. 2003). Accordingly, if this issue is unresolved by the Federal Circuit before trial, the parties likely will each present evidence as to the appropriate amount of damages under the two different rates of acceptance separately advocated by the Government and SCE.

---

1 We must take exception with SCE's position that damages can be determined without a finding as to the rate of acceptance, and its citation to this Court's decision in SMUD for that proposition. The Court's failure to make a finding regarding the rate of acceptance is at the heart of the Government's appeal in that matter, and may well be addressed by the Federal Circuit in its resolution of that case.

As plaintiff discusses above, another issue that the Federal Circuit is expected to resolve in the Pacific Gas and Yankee Atomic appeals is that of Greater-than-Class-C Waste ("GTCC"). The trial court in these cases reached directly opposite conclusions as to whether DOE has an obligation to accept GTCC pursuant to the Standard Contract. A decision by the Federal Circuit should resolve whether SCE may claim damages related to its storage of GTCC, or conversely whether SCE must account for the costs it would have incurred to store GTCC even had DOE removed spent nuclear fuel from its site.

ii. *Interlocutory appeal pending*.

Since 1997, the Government has been specifically enjoined, via a writ of mandamus issued by the United States Court of Appeals for the District of Columbia Circuit, from relying upon the "Unavoidable Delays" clause of the Standard Contract to excuse its delayed performance. See Northern States Power Co. v. United States Dept. of Energy, 128 F.3d 754, 760 (D.C. Cir. 1997). That provision states that "[n]either the Government nor Purchaser shall be liable under this contract for damages caused by failure to perform its obligations hereunder, if such failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform." 10 C.F.R. § 961.11, Art. IX.A.

The effect of the writ of mandamus upon the Government's ability to defend the liability phase of this case cannot be overstated. The District of Columbia Circuit has eliminated one of the central provisions of the Standard Contract that governs the parties' liability in the event of delays in SNF acceptance. With this clause, DOE would have had the ability to present an absolute defense to liability in this case. Without it, DOE now faces billions of dollars in damages claims. The writ of mandamus wholly changes the nature of the Standard Contract, essentially and inappropriately creating a contract (one without an "Unavoidable Delays" clause) between the parties to which DOE never agreed.

We have consistently contended that the District of Columbia Circuit overstepped its jurisdiction and authority in issuing this writ of mandamus (given that the judicial review provision of the NWPA, 42 U.S.C. § 10139, does not permit the District of Columbia Circuit to review contract administration matters). In Nebraska Public Power District v. United States, 73 Fed. Cl. 650, 673 (2006) (Allegra, J.) ("NPPD"), this Court determined that the writ of mandamus was void because, in issuing the writ, the District of Columbia Circuit "operated in excess of its jurisdiction and, specifically, without an appropriate waiver of sovereign immunity." This Court subsequently certified its decision for interlocutory appeal to the

United States Court of Appeals for the Federal Circuit. The briefing in that case has been completed, and oral argument was held on December 3, 2007.

While we agree that this case is ready to be scheduled for trial, we must note our disagreement with SCE's characterization of the potential effect that a decision in the Government's favor in the NPPD matter would have on this matter. If the Government is ultimately permitted to present an "Unavoidable Delays" defense in the spent nuclear fuel cases, including this one, we believe it will have a substantial effect upon the cases currently pending before the Court. We anticipate that, given our belief that this defense, if successful at trial, would amount to an absolute defense against liability, plaintiffs in the various spent nuclear fuel cases would seek to take more discovery on this issue. The type of discovery that we anticipate they would seek would not be easily accommodated during a few weeks of the pretrial schedule, as SCE appears to suggest, and, as such, would likely necessitate a change in trial date.

We also disagree with the suggestion by SCE that, somehow, despite an absolute prohibition against raising this defense imposed by the District of Columbia Circuit, with which we have fully complied, we have nonetheless been able to adduce all the evidence needed on this issue at

various trials, under the guise of some other issue. We expect, should we be permitted to raise the "Unavoidable Delays" defense, that we would seek to admit a considerable amount of documentary and testimonial evidence that has yet to be raised in any trial.

iii. *Other Cases.*

We agree with SCE that the other spent nuclear fuel cases, including those awaiting final judgment or for which the time for appeal has not yet run, those scheduled for trial, those in active discovery, and those that are stayed or not in active discovery, often have issues in common with this case.[2] The effect of the ultimate decisions in those cases will be unknown until there are decisions by the Federal Circuit in any appeals in those cases.

[2] We take no position as to SCE's characterization as to why certain plaintiffs have agreed to stay their cases.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch,

s/ Brad Fagg
Brad Fagg
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5191 – telephone
(202) 739-3001 – facsimile

s/ Christopher J. Carney
CHRISTOPHER J. CARNEY
Trial Attorney
Commercial Litigation Branch,
Civil Division
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, DC 20530
(202) 305-7562 – telephone
(202) 305-7643 – facsimile

Of Counsel:
Paul M. Bessette
MORGAN, LEWIS & BOCKIUS, LLP

Attorneys for Plaintiff
Southern California Edison Company

Of Counsel:
Marian E. Sullivan
Andrew P. Averbach
Lisa L. Donahue
Civil Division
Department of Justice
1100 L Street N.W.
Washington D.C. 20530
Attorneys for Defendant

July 1, 2008

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 1st day of July, 2008, the foregoing was filed with the Court electronically, and service is thereby deemed to have been made upon all counsel of record.

s/ Brad Fagg