**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**SOUTHERN CALIFORNIA EDISON COMPANY,**

Plaintiff,

v.

**UNITED STATES OF AMERICA,**

Defendant.

---

Case No. 04-0109C

Judge Baskir

# PLAINTIFF'S OPPOSITION TO "DEFENDANT'S MOTION TO COORDINATE DISCOVERY AND DEVELOP A LITIGATION PLAN FOR THE SPENT NUCLEAR FUEL CASES"

BRAD FAGG
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue,
Washington, DC 20004
Telephone: (202) 739-5191
Facsimile: (202) 739-3001

Of Counsel:
Paul M. Bessette
MORGAN, LEWIS & BOCKIUS, LLP

Attorneys for Plaintiff
Southern California Edison Company

September 8, 2008

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................ 2
BACKGROUND ........................................................................ 4
1. History and status of the spent fuel cases. ........................................ 4
2. SCE and this case. ........................................................................ 13
ARGUMENT ........................................................................ 15
1. The relief that the government seeks is not justified by its claims of duplicative discovery. ........................................ 15
2. The remaining cases do not present the sort of controlling commonalities that warrant the "coordination" sought by the government. ........................................ 16
3. The government's one-size-fits-all approach and omnibus requested "litigation plan" do not accommodate the unique aspects of SCE and this case. ........................................ 21
CONCLUSION ........................................................................ 22

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Entergy Nuclear Indian Point 2, LLC v. United States*, 62 Fed. Cl. 798 (2004) ....... 1, 17

*Indiana Michigan Power Company v. Department of Energy*, 88 F.3d 1272 (D.C. Cir. 1996) ....... 5

*Indiana Michigan Power Company v. United States*, 422 F.3d 1369 (Fed. Cir. 2005) ....... 7, 8

*Lowrey Economic Redevelopment Authority v. United States*, 71 Fed. Cl. 549 (2006) ....... 17

*Maine Yankee Atomic Power Company v. United States*, 225 F.3d 1336 (Fed. Cir. 2000) ....... 5

*Northern States Power Company v. Department of Energy*, 128 F.3d 754 (D.C. Cir. 1997) ....... 4

*Northern States Power Company v. United States*, 43 Fed. Cl. 374 (1999) ....... 5

*Northern States Power Company v. United States*, 224 F.3d 1361 (Fed. Cir. 2000) ....... 5, 6, 11

*Pacific Gas & Electric Co. v. United States*, No. 2007-5046 (Fed. Cir. Aug. 7, 2008) ....... 12

*Sacramento Municipal Utility District v. United States*, No. 2007-5052 (Fed. Cir. Aug. 7, 2008) ....... 12

*Southern Nuclear Operating Company v. United States*, 77 Fed. Cl. 396 (2007) ....... 11

*Yankee Atomic Electric Company v. United States*, No. 2007-5025 (Fed. Cir. Aug. 7, 2008) .................................................. 11-12

**FEDERAL STATUTES**

28 U.S.C. § 1407 .......................................................................... 20

28 U.S.C. § 2501 .......................................................................... 7

**MISCELLANEOUS**

*Multidistrict Litigation Manual* (2008) ............................................ 19, 20

N THE UNITED STATES COURT OF FEDERAL CLAIMS

**SOUTHERN CALIFORNIA EDISON COMPANY,**

Plaintiff,

v.

**UNITED STATES OF AMERICA,**

Defendant.

Case No. 04-0109C

Judge Baskir

**PLAINTIFF'S OPPOSITION TO "DEFENDANT'S MOTION TO COORDINATE DISCOVERY AND DEVELOP A LITIGATION PLAN FOR THE SPENT NUCLEAR FUEL CASES"**

Plaintiff Southern California Edison Company ("SCE"), respectfully submits the following opposition to Defendant's Motion to Coordinate Discovery and Develop a Litigation Plan for the Spent Nuclear Fuel cases, filed on August 21, 2008.

The government's motion is procedurally flawed, and quite confusing. The spent fuel cases clearly do not involve the same "contract" or, because there are different plaintiffs, the same "parties," and RCFC 40.2(a) is therefore by its plain terms inapplicable. *Entergy Nuclear Indian Point 2, LLC v. United States*, 62 Fed. Cl. 798, 801 (2004) (under RCFC 40.2(a),

"[p]recisely the same contract must be involved, not just a contract that has similar or identical terms.") Yet, in letters to individual judges dated August 28, 2008, the government appeared, after the fact, to attempt to invoke that Rule. Moreover, the government's filing is styled a "motion," rather than the "notice" prescribed by both RCFC 40.2(a) and 40.2(b). We are treating the submission as a motion in this case, and filing this response on behalf of SCE in this case only.

## INTRODUCTION

The government's most recent omnibus motion to coordinate discovery in pending spent nuclear fuel damages cases has it all completely backwards.

In our judicial system, when multiple pending cases present argued substantial commonalities (say, for example, legal "pick-up rate" obligations under similar standard contracts), the fundamental theory underlying any sort of coordination-type relief or approach is to facilitate resolution of such commonalities if appropriate and, *then*, to allow for resolution of remaining and inherently individual issues or return of the cases to the individual judges. Not, as the government would have it, the other way around. That is among the most elemental precepts of the Court's current Rules, the

recent Advisory Council recommendations regarding suggested changes to those Rules, analogous practice before the federal Judicial Panel on Multidistrict Litigation, and basic common sense—all of which are turned upside down by the government's most recent motion.

That motion should be denied. The allegedly duplicative discovery about which the government complains was all related to issues that are now resolved. No remaining common issues predominate or play a central role, certainly not so as to warrant the extraordinary relief requested by the government. Indeed, the government does not even purport to identify any such issue, but instead relies exclusively upon complaints about past inequities that it has allegedly suffered. The argued duplicative discovery, however, was not caused—and none will be caused—by SCE in this case. Moreover, the one-size-fits-all approach advocated by the government (while easy enough to file in 46 cases once the brief is on their system), will do nothing to expedite resolution of pending cases or conserve resources for anyone, and does violence to core principles of individual and independent judicial review of a party's claims. There is nothing in the government's motion that is specific to this case or to SCE. The

government's motion should be rejected in this case and, indeed, in all cases in which it was filed.

## BACKGROUND

### ***1. History and status of the spent fuel cases.***

A. The Nuclear Waste Policy Act, and contracts between the Department of Energy (DOE) and holders of spent nuclear fuel entered pursuant to that Act in 1983, required DOE to commence acceptance of spent nuclear fuel in 1998. By the later part of the 1980s, however, it became apparent that DOE was not going to perform in accordance with the expectations of the parties. As the 1998 performance date approached, many utilities sought, in the D.C. Circuit, to compel DOE to comply with its statutory obligations to commence accepting spent nuclear fuel, which obligations were confirmed to be "unconditional." *Indiana Michigan Power Company v. Department of Energy*, 88 F.3d 1272, 1277 (D.C. Cir. 1996). In response to a subsequent request for mandamus relief, however, the D.C. Circuit ultimately declined to order DOE to perform, noting that breach of contract remedies might provide "potentially adequate" alternative relief. *Northern States Power Company v. Department of* Energy, 128 F.3d 754, 759 (D.C. Cir. 1997). The D.C.



DB1/62080052.1

Circuit did, however, issue a limited mandamus order, precluding DOE from seeking, as it had on multiple occasions including in violation of the prior *Indiana Michigan* mandate, to evade its obligations by arguing that its obligations were conditional or by invoking excuses to the effect that its failures were "unavoidable."

B. And, so, in 1998 the first "wave" of approximately a dozen spent nuclear fuel damages lawsuits was filed in this Court. The government responded with a flurry of procedural defenses,[1] and ultimately settled on the position that contract holders could not sue directly in this Court, but must first exhaust a contractual dispute resolution scheme. Two years later that position was rejected by the Federal Circuit, which confirmed that DOE had committed a breach that "involved all the utilities that had signed the standard contract—the entire nuclear electric industry," by failing to commence acceptance of spent nuclear fuel in 1998. *Maine Yankee Atomic Power Company v. United* States, 225 F.3d 1336, 1342 (Fed. Cir.

[1] *See Maine Yankee Atomic Power Company v. United States*, No. 98-474C, Order (November 3, 1998) (Docket item 24) (rejecting government argument that claims were not yet ripe); *Northern States Power Company v. United States*, 43 Fed. Cl. 374, 381-82 (1999) (rejecting government argument of res judicata), *rev'd on other grounds*, 224 F.3d 1361 (Fed. Cir. 2000).

2000); *Northern States Power Company v. United States*, 224 F.3d 1361 (Fed. Cir. 2000).

C. Soon thereafter, the government filed the first of its motions to consolidate all of the then-pending cases, and reassign all of the cases to a single judge. As described at page 10 of the government's current motion, that request ultimately led to extensive, agreed-upon coordinated discovery regarding "schedule issues," including the "order, pace, and rate of acceptance of spent nuclear fuel and high-level radioactive waste pursuant to the Standard Contract, any priority for shutdown reactors, exchanges of acceptance slots, and the Government's obligation to accept and time of acceptance of Greater-Than-Class-C wastes." The so-called schedule issues or "pick up rate," which is the rate by which DOE was obligated to accept spent nuclear fuel upon commencement of performance in 1998, has constituted the government's chief defense. Such a "pick-up rate" rate can have a significant impact on some utilities' damages, because, if the rate is too low, the government is able to argue that all of the mitigation measures for which damages are claimed would have been required "anyway," even if DOE had performed. Over approximately the next two years, such discovery regarding schedule issues ensued, with the

government periodically and unsuccessfully renewing, on at least two occasions, its motion to consolidate and re-assign the cases.

D. As the six-year period from January 31, 1998 approached in 2004, and utilities therefore faced an arguable implication of the limitations period at 28 U.S.C. § 2501, a second "wave" of approximately 45 lawsuits was filed. Indeed, every party that had signed a DOE Standard Contract ultimately filed a lawsuit. Initially, as confirmed in a status conference on April 30, 2004, most of those cases were stayed, pending developments in the earlier-filed cases.

E. In a decision that became final in late 2005, the Federal Circuit in *Indiana Michigan Power Company v. United States*, 422 F.3d 1369 (Fed. Cir. 2005) made clear an important rule in spent nuclear fuel damages cases: that in partial breach cases (as these cases necessarily are), damages may only be sought up until a date certain prior to trial, with recovery of future damages reserved for subsequent proceedings. The Federal Circuit also, importantly, confirmed that plaintiffs would not be subject to merger or res judicata-type defenses in such subsequent proceedings, or statute of limitations defenses if such subsequent proceedings were commenced within six years. By confirming that a spent

nuclear fuel plaintiff need not prove future events such as the actual date of DOE performance or the nature of mitigation activities not yet taken, the *Indiana Michigan* decision significantly clarified the landscape for spent nuclear fuel plaintiffs, and pointed the way toward resolution and recovery.

F. Since the *Indiana Michigan* decision by the Federal Circuit, several plaintiffs, including SCE, successfully sought to have the stays of their cases lifted, and several cases have proceeded through discovery and trial. It is here that some important clarifications to the government's recited history of these cases at pages 7-17 of its motion are necessary, because the dire picture painted by the government does not tell the whole story.

First, a substantial number (if not the outright majority) of the plaintiffs that have pursued active prosecution of their cases during the last three years have *not* engaged in *any* of the allegedly duplicative discovery about which the government complains. Counsel for SCE, for example, is also counsel of record in a number of other cases, including six cases that have

completed, or are well into, discovery,[2] and three that have completed trials.[3] In none of those prosecuted cases has a *single* deposition of current or former DOE personnel been sought or taken, nor have any "generic" interrogatories, document requests, or other discovery requests regarding schedule or other issues been served upon the government.[4] No government privilege claims have been challenged, no discovery-based motions practice has occurred, and the government has not been required—by those plaintiffs or the Court, anyway—to expend any even arguably unnecessary resources. The government's selective recitations of discovery anecdotes from other cases at pages 13-16 of its motion, and its overblown rhetoric regarding a "discovery onslaught" that is "highly coordinated" by plaintiffs' counsel, are therefore quite misleading.

[2] *Arizona Public Service Company v. United States*, No. 03-2832; *Southern California Edison Company v. United States*, No. 04-109, *Carolina Power & Light Company v. United States*, No. 04-37; *Dominion Resources, Inc. v. United States*, No. 04-83; *Dominion Resources, Inc. v. United States*, No. 04-84; *Entergy Nuclear Vermont Yankee, LLC. v. United States*, No. 03-2663.

[3] *Carolina Power & Light Company v. United States*, No. 04-37; *Dominion Resources, Inc. v. United States*, No. 04-83; *Dominion Resources, Inc. v. United States*, No. 04-84.

[4] The only discovery requested by the plaintiffs in those cases involved basic plaintiff-specific inquiries, such as those relating to government testifying experts in the specific case itself.

Second, the government itself continues to call the same current and former DOE witnesses to the stand in its own cases, and has continued to present its "pick up rate" defense and other allegedly common issues in successive multiple cases, in the face of mounting losses, in search of favorable rulings that it has then selectively cited in support in subsequent cases. Moreover, on the stand, those DOE witnesses have on several occasions disavowed prior deposition testimony as dated or rendered obsolete by developments since their depositions occurred. The government has also consistently objected to, and even moved to strike, designations of prior testimony of current and former DOE personnel.[5] Given all of that, the government's complaints about key witnesses being re-deposed or having to testify on multiple occasions ring quite hollow.

Third, over the years and in various cases the government has continued to try out new defenses, not addressed by prior discovery, apparently as it thinks of them. Some examples include claimed offsets

[5] *See, e.g.,* Defendant's Motion to Strike, *Carolina Power & Light Company v. United States*, No. 04-37, Docket Item 53 (November 2, 2007).

and related defenses based upon the so-called "one time fee"—asserted for the first time more than five years into the litigations,[6] real party in interest defenses,[7] res judicata,[8] and statute of limitations defenses.[9] Again, given the ever-shifting grounds by which the government has sought to avoid its contractual and statutory responsibilities, the government cannot credibly complain about being subjected to updated discovery as individual cases actually approach trial.

G. As the Court is aware, the Federal Circuit in a trio of recent cases resolved the "pick-up rate" issue that has been the major substantive government defense to date, and the one government defense with the most arguable common applicability to multiple cases. *See Yankee Atomic Electric Co. v. United States*, Nos. 2007-5025, *et al.* (Fed. Cir. August 7,

6 *See* Amended Answer, *Consumers Energy Company v. United States*, No. 02-1894C, Docket Item 52 (July 9, 2004); Defendant's Motion for Summary Judgment, *Consumers Energy Company v. United States*, No. 02-1894C, Docket Item 53 (July 9, 2004).

7 *Southern Nuclear Operating Company v. United States*, 77 Fed. Cl. 396, 452 (2007), appeal pending, No. 2008-5020 (Fed. Cir.)

8 *See Northern States Power Company v. United States*, 224 F.3d at 1365.

9 *See* Defendant's Response to Plaintiff's Motion for Leave to Amend Its Complaint, *Yankee Atomic Electric Company v. United States*, No. 98-126C, Docket Item 938 (April 4, 2006), at pp.14-18.

2008), *Pacific Gas & Elec. Co. v. United States*, No. 2007-5046 (Fed. Cir. August 7, 2008), and *Sacramento Mun. Util. Dist. v. United States*, Nos. 2007-5052, *et al.* (Fed. Cir. August 7, 2008). In those cases, the Federal Circuit rejected the decision of the one trial judge that had adopted the government's position, holding that such a position "cannot be correct," and finding that judge to have "improperly relied on a unilateral DOE estimate made far after contract formation and tainted by a statutory framework in place at that time, which, if left unchanged, would have rendered timely performance impossible." *Pacific Gas and Electric Company*, No. 2007-5046, slip op. at 3, 12. The Federal Circuit held, in all three cases, that pick-up rates reflected in certain 1987 DOE documentation constituted the legal obligations of the government.

For present purposes, it is particularly significant to note that *all* of the allegedly duplicative discovery about which the government complains at pages 7-17 of its motion involved the "pick up rate" and associated issues, which are now resolved. Whatever complaints the government may have had about the prior coordinated proceedings and their subsequent enforcement (and, as noted, we believe those complaints to be overblown), those matters are in any event now over and done with. This most recent

renewed motion for coordination—which is at least the *seventh* such request by our count and by the government's own admission, *see* 8/21/08 Govt. Br. at 10, 12, 17—is the least meritorious. Nothing has happened to *improve* the government's case for coordination. To the contrary, the Federal Circuit has *resolved* the only arguably common issue discussed in the government's latest motion, thereby *eliminating* whatever residual need for coordination might have been argued to exist.

***2. <u>SCE and this case.</u>***

SCE is one of the spent nuclear fuel damages plaintiffs (perhaps one of a silent majority) who do not share the government's bitter complaints regarding what it calls the "haphazard manner" in which the cases have been managed and resolved by the Court to this point. 8/21/08 Govt. Br. at 23. To the contrary, by allowing those plaintiffs who desire to push forward (such as SCE) to do so, and by accommodating those plaintiffs who have not yet, the matters have unfolded in a way that has effectively balanced important, and sometimes competing, interests.

As the Court is aware, discovery in this action is essentially complete. As a result of a status conference held on the very day before the Federal Circuit decisions were issued, the Court set trial dates in April 2009, with

expected pre-trial filings in January 2009. *See* Order, August 6, 2008, (docket item 59). That schedule is quite achievable, and SCE requests that it be honored.

As a result of the recent Federal Circuit decisions, SCE contemplates some modest supplemental production of information and, possibly, a slight modification of the amount of its claimed damages. SCE would be agreeable to reasonable follow-up discovery relating to that supplementation by the government, should the government so request. Such supplementation can easily be accomplished so as to preserve the pre-trial and trial schedule reflected in the Court's Order in this case dated August 6, 2008.

As matters now stand, however, SCE does not intend to take any further discovery from the government, and there is therefore nothing about this case to "coordinate." Moreover, SCE long ago produced to the government the "detailed claim" that the government now asks every plaintiff to produce on the same day, sixty days after the Federal Circuit decisions become final. The government's proposed "litigation plan" is a complete non-sequitur as applied to this case.

## ARGUMENT

### 1. ***The relief that the government seeks is not justified by its claims of duplicative discovery.***

As noted above, the allegedly "duplicative discovery" that is the essential basis of the government's motion all involved, by the government's own admission, "the following four core subjects: general date of performance by DOE, GTCC disposal, development and interpretation of the Standard Contract, and the general rate of SNF acceptance by DOE." 8/21/08 Govt. Br. at 14. *All* of those issues, of course, have now been resolved by the Federal Circuit. Assuming that the government will now honor those appellate rulings, there should be no further discovery regarding such matters at all. Certainly, none will be sought by SCE. The government's motion is an extended after-the-fact gripe about the results of prior discovery proceedings in a minority of cases, but, given the current status of the pending spent fuel cases, the motion is not at all productive or useful with respect to future proceedings.

Moreover, to the extent that the government is suggesting that past is prologue and it is seeking to avoid a repeat of what it pejoratively calls the "absurd nature of discovery in the SNF cases," 8/21/08 Govt. Br. at 13, that, too, is a misplaced assertion. Most significantly, as described

immediately below, there are no remaining allegedly common issues that predominate or play a central role. The most elemental linchpin of any sort of coordination-type relief is, therefore, wholly absent.

In addition, the government's allegedly unfavorable experiences from a handful of cases cannot be translated into an indictment of every single spent nuclear fuel plaintiff. Again as noted above, counsel for SCE, speaking on behalf SCE as well as approximately a dozen other plaintiffs (including several that have now proceeded through discovery and completed trials), represented early on that duplicative discovery would not be sought, and that use would be made of "all of the prior work that has been done." *See* 8/21/08 Govt. Br., App. A3-4. That representation has been honored to a T. The fact that the government has apparently been bested in a handful of discovery disputes in a minority of other cases (on issues now resolved) does not justify the sweeping prospective relief sought in this and every other pending case.

### *2. <u>The remaining cases do not present the sort of controlling commonalities that warrant the "coordination" sought by the government.</u>*

It is easy, especially in this Court where one of the parties is always the same, to assert that there are "common issues of fact and law" among

multiple cases. That, however, is merely the starting point, and is not sufficient to justify the sort of extraordinary relief sought by the government. There must be significant, predominant, or controlling commonalities before coordination-type relief will be considered. That is true under the current Rules, the recent Advisory Committee recommendations regarding amendment of those Rules, and analogous practice in other federal courts.

A. Under the Court's current Rules, "directly related" cases can result in assignment to the same judge, but that category is narrowly defined and by its plain terms not applicable to the pending spent fuel cases. RCFC 40.2(a)(1)(A) and (B).[10] Even with directly related cases, transfer and consolidation are not always automatic, RCFC 40.2(a)(3), but in some cases must be accompanied by motion. In such cases, the controlling principles are the required predominance of common issues and associated economies, as reflected in consolidation principles of RCFC 42 and 42.1. *See Lowrey Economic Redevelopment Authority v. United States*, 71 Fed. Cl. 549 (2006); *Entergy Nuclear Indian Point 2, LLC v. United States*, 62 Fed. Cl. at 802-04. "Indirectly related" cases similarly

[10] *Entergy Nuclear Indian Point 2, LLC v. United States*, 62 Fed. Cl. at 801 (under RCFC 40.2(a), "[p]recisely the same contract must be involved, not just a contract that has similar or identical terms.")

allow for coordination-type relief, but the primary prerequisite, beyond the threshold “common issues of fact,” is “that transfer, consolidation, or the adoption of a coordinated discovery schedule *would significantly promote the efficient administration of justice*.” RCFC 40.2(b)(1) (emphasis supplied). The bar for departing from the traditional scheme whereby an individual plaintiff is able to prosecute its own claims as it sees fit is set intentionally high (especially where, as here, the plaintiff objects), in order to protect important interests that lie at the heart of our adversary system.

The recent Advisory Council recommendations, while seeking to improve procedures for the handling of related cases, are consistent with these elemental concepts. The Report accompanying the recommendations recites the importance of “the historical independence of individual Judges on the Court,” and the “right of parties to litigate their own cases in the manner they deem optimal, without undue interference from other cases or from case management procedures imposed by others.” 8/21/08 Govt. Br., App. A40. The Advisory Council recommendations retain the critical principle (as expressed in the current RCFC 40.2(b)(1)) that “transfer, consolidation, coordinated discovery or other common or coordinated proceedings would significantly promote the efficient

administration of justice," in order for cases to be deemed related and consideration of coordination-type relief to be warranted. 8/21/08 Govt. Br., App. A43. The importance of that key prerequisite is emphasized in the section-by-section commentary. 8/21/08 Govt. Br., App. A45. Once any necessary coordination-type relief is ordered by the panel,[11] and the need for such relief no longer exists, the recommended rule change provides that "the panel's duties under this Rule shall be discharged, and the panel shall have no continuing authority with regard to the related cases." 8/21/08 Govt. Br., App. A44.

And, these elemental principles guide analogous practice in other federal courts. In matters before the Judicial Panel on Multidistrict Litigation, for example, the mere presence of common issues of law "is neither a necessary nor sufficient condition for transfer." D. Herr, *Multidistrict Litigation Manual,* § 5.4 at 111 (2008) (citations omitted). Even

---

[11] The government's motion proceeds as if the recommended rule changes had already been adopted by the Court, and, indeed, proceeds to request relief from the non-existent three judge panel. *E.g.,* 8/21/08 Govt. Br. at 4. The current Rules do not, of course, provide for such a three judge panel, which is why such procedures were contained in a recommended rule *change*. We do not here address this and the other significant procedural deficiencies of the government's motion (*see, e.g.,* page 1 above), however, because the motion is so substantively without merit.

where common issues of fact and law "abound," the MDL Panel "considers the role and importance of common issues to the litigation as a whole. If common issues *do not at least play a central role*, however, transfer will not be ordered." *Id.* at 111-112 (emphasis supplied) (citations omitted). Where appropriate pretrial proceedings are concluded—for example, after common issues are resolved and discovery regarding such issues completed—individual cases are returned to the transferor courts for resolution. 28 U.S.C. § 1407; *Multidistrict Litigation Manual* § 20.133 at 567. Preferences of the parties, while not controlling, are acknowledged to be given due consideration. *Multidistrict Litigation Manual* § 5.34 at 151. Again, the focus is on the predominance of the allegedly common issues, which must be balanced against the important interests of individual plaintiffs.

B. Under these elemental principles, the government's current motion fails completely. The government devotes its entire brief to discussion of the pick-up rate and associated issues *that have now been resolved by the Federal Circuit.* The government does not even purport to identify any remaining, prospective "common issues," akin to the pick-up rate, that could arguably play a "central role" in this or the remaining

pending cases. This key deficiency requires rejection of the government's most recent renewed request.

### *3. <u>The government's one-size-fits-all approach and omnibus requested "litigation plan" do not accommodate the unique aspects of SCE and this case.</u>*

The government's motion makes absolutely no sense in the circumstances of this case, and the very fact that it was even filed in this case demonstrates the severe problems with the government's position. SCE has already long ago submitted the "detailed claim" that the government requests every plaintiff be ordered to submit sixty days after the recent Federal Circuit decisions become final. The government has already served and completed discovery, and this action already has a scheduling order in place. At this juncture, there is absolutely no justification for this case getting "sucked into" the unwieldy common proceeding described by the government. It would slow matters down, and be completely contrary to the "just, speedy, and inexpensive" determination of the action. RCFC 1. The government's request for imposition of a "litigation plan" should be denied.

## CONCLUSION

For the reasons stated above, the government's motion should be denied.

Respectfully submitted,

s/ Brad Fagg

BRAD FAGG
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue,
Washington, DC 20004
Telephone: (202) 739-5191
Facsimile: (202) 739-3001

Of Counsel:
Paul M. Bessette
MORGAN, LEWIS & BOCKIUS, LLP

Attorneys for Plaintiff
Southern California Edison Company

September 8, 2008

**CERTIFICATE OF FILING**

I hereby certify that on this 8th day of September, 2008, a copy of the foregoing was served filed electronically with the Court. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Brad Fagg

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 8th day of September, 2008, the foregoing was filed with the Court electronically, and service is thereby deemed to have been made upon all counsel of record.

s/ Brad Fagg